No. 81-84

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

IN THE MATTER OF CUSTODY OF
R.L.S. & T.L.S., Minors,
GARY L. SAYER,

       Petitioner and Appellant,

     -vs-

CARLA JEAN BARKHOFF a/k/a
ENGDAHL,

       Respondent and Respondent.

Appeal from: District Court of the Tenth Judicial District,
In and for the County of Fergus, The Honorable
Leroy McKinnon, Judge presiding.

Counsel of Record:

    For Appellant:

       Radovich & Johnson, Billings, Montana

    For Respondent:

       William E. Berger, Lewistown, Montana

Submitted on Briefs:  June 4, 1981

Decided:  August 20, 1981

Filed: AUG 20 1981

_Thomas J. Kearney_
Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

Garry Sayer appeals from a judgment of the District Court which denied his petition for modification of custody of his minor children, and modified the visitation provisions of a Wyoming custody decree.

Appellant and respondent are the natural parents of Travis Sayer, age 4 and Rosemary Sayer, age 5, born during the period the parties lived together. When the parties separated in July of 1979, they were living in Sheridan County, Wyoming. Initially, the appellant retained physical custody of the children; however, following disagreements, the respondent petitioned a Wyoming court and was granted a writ of habeas corpus. The appellant then filed a petition to determine paternity and for legal custody of the children. Before trial, the action was settled by an order of the Wyoming court which ratified and incorporated a settlement agreement executed by the parties.

The agreement established the appellant's paternity and contained the following provisions:

> "2. Custody: Carla Jean Engdahl and Garry L. Sayer are both fit and proper to have custody of said minor children. Carla Jean Engdahl shall have primary custody and control of Rosemary and Travis Sayer subject to the right of reasonable visitation in the father, Garry L. Sayer.

> "3. Visitation: Until each respective child reaches school age, Carla Jean Engdahl shall have the minor children in her custody six months, and Garry L. Sayer shall have them in his custody for the other six months. Carla shall have said children for the initial six month period beginning January 1, 1980. After each child reaches the age at which he or she shall attend school, Carla Jean Engdahl shall have custody of that child during the school year and Garry L. Sayer shall have custody during the summer months."

Thereafter, the respondent and children left Wyoming and moved to Lewistown, Montana, to be near the respondent's

family. The appellant, dissatisfied with the order of the Wyoming court, petitioned the District Court of the Thirteenth Judicial District, Yellowstone County, for modification of custody, alleging the children were in serious physical and mental danger due to the respondent's unstable mental condition and drug abuse. The respondent answered and cross-petitioned the court requesting full custody of the children alleging the petitioner abused alcohol and had a violent temper. The parties subsequently stipulated to a venue change to the Tenth Judicial District, Fergus County, where a trial before the court was held.

During the trial the District Court limited much of the testimony to the period following the Wyoming decree. Appellant claims this was error. The court entered findings of fact and conclusions of law on December 1, 1980, and ordered:

> "1. That the primary care, custody and control of Rosemary Lee Sayer and Travis Loren Sayer be and remain with the respondent, Carla Jean Engdahl.
>
> "2. That the petitioner, Gary [sic] L. Sayer, have the right of reasonable visitation, including the right to take the said children into his home for the period of one month during the summer each year; that otherwise visitation be arranged by prior notice between the parties . . ."

We find the following issues raised by this appeal:

1. Whether the District Court erred by limiting inquiry to facts following the Wyoming decree.

2. Whether the District Court erred in restricting appellant's visitation rights.

SCOPE OF INQUIRY IN MODIFICATION OF CUSTODY HEARINGS

During the trial the court sustained respondent's objections to the admission of any facts prior to the initial decree agreeing that the primary issue was not parental fitness but rather whether there had been a change in circumstances

since the initial decree. A change in circumstances is a statutory prerequisite for a change in custody. Section 40-4-219(1), MCA. Appellant contends it was reversible error for the court to limit the evidence to post decree facts. We agree with the appellant.

Modification of custody decrees is governed by section 40-4-219, MCA, modeled after the Uniform Marriage and Divorce Act (UMDA), which provides:

"(1) The court shall not modify a prior custody decree unless it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of entry of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interest of the child. In applying these standards the court shall retain the custodian appointed pursuant to the prior decree unless:

"(a) the custodian agrees to the modification;

"(b) the child has been integrated into the family of the petitioner with consent of the custodian; or

"(c) the child's present environment endangers seriously his physical, mental, moral, or emotional health and the harm likely to be caused by change of environment is outweighed by its advantage to him . . . ."

Resolution of this issue requires construction of the phrase "facts . . . unknown to the court at the time of entry of the prior decree." Section 40-4-219(1), MCA. Respondent contends that although no hearing was held prior to entry of the initial decree, it should be held res judicata on the issue of parental fitness. In the case of Svennungsen v. Svennungsen (1974), 165 Mont. 161, 527 P.2d 640, decided before the adoption of the UMDA, this Court considered whether the noncustodial parent must make a showing of change in circumstances where the custody issue had not been contested in an adversary hearing in the initial dissolution action. We held in the affirmative.

-4-

"Whether the order respecting custody has been granted after a full adversary proceeding or after a default divorce, as in this case, the considerations are the same. The requirement for a finding of a change in circumstances is designed to protect the person who has custody from the harassment of further litigation. We recognize that this line of reasoning would be inappropriate if appellant was in fact unfit to have custody. That case is not now before us. The district court, in both the decree of divorce and the order modifying custody, found that the appellant was a fit and proper person to have the care, custody and control of Derek. We hold merely that, based upon the facts of this case, a showing of a substantial change of circumstances should have been required before the district court inquired into the custody issue on respondent's petition and that the district court erred in holding that, solely because the issue of custody was not 'litigated' in the prior divorce hearing, the custody issue could be litigated afresh before him." 527 P.2d at 643.

The reasoning supporting the rule of Svennungsen emphasized the principles of custodial continuity and protection of the custodian from undue harassment while recognizing that an unfit custodian would be an exception to the rule. Montana's adoption of section 40-4-219, MCA, did not diminish the importance of these principles; however, the new statute does direct the District Court to examine all relevant facts, "unknown to the court at the time of entry of the prior decree . . ."

The Washington case of Timmons v. Timmons (1980), 94 Wash.2d 594, 617 P.2d 1032, addressed the same issue in applying an identical statute. The reasoning of the court is sound, and we adopt it in construing our statutory provision.

"Petitioner urges that 'facts . . . unknown to the court' refers only to facts not presented to the court when a genuine contested hearing took place. Since her dissolution was uncontested, she maintains that only facts which arose since the decree should have been considered and that the trial court erred in admitting pre-decree facts.

"Before the present Dissolution Act, former RCW 26.08.110 (repealed 1973) provided that custody decrees could be 'modified, altered, and revised by the court from time to time as circumstances may require.' We held under this statute that res judicata principles generally applied to bar reconsideration of conditions existing at the time of

-5-

the decree. Brim v. Struthers, 44 Wash.2d 833, 835, 271 P.2d 441 (1954). Thus, modification required a change of circumstances since the original decree, and evidence relating to events and conditions prior to the decree was inadmissible. Holten v. Holten, 64 Wash.2d 203, 206, 390 P.2d 982 (1964); see White v. White, 24 Wash.2d 52, 56, 163 P.2d 137 (1945).

"In limiting the scope of inquiry, it was assumed that the court granting the original decree made its decision based on knowledge of all the existing circumstances. In re Rankin, 76 Wash.2d 533, 537, 458 P.2d 176 (1969). When a custody decree was entered upon default, therefore, the reasons for the rule did not apply:

"'The court has had no opportunity to observe the two contending parents upon the witness stand or to examine the evidence concerning their fitness and concerning the welfare of the child. It must accept the allegations of the petitioner or, at best, the uncross-examined testimony of the petitioner . . .' Rankin, at 536, 458 P.2d at 178.

"Thus, a default custody decree could be modified without a showing of changed circumstances and the court could consider facts which existed at the time the original decree was entered. Rankin, at 537-38, 458 P.2d 176; see White v. White, supra.

"Petitioner argues that the Rankin rule should not apply to uncontested dissolutions under the 1973 Act. She distinguishes the Rankin decree, which was uncontested because it was by default, from the usual uncontested dissolution today, in which the decree is entered upon a petition which both parties have joined. To allow consideration of pre-decree facts, she contends, would undermine the policy of the present Dissolution Act that the parties, rather than a judge, can best work out dissolution arrangements.

"We conclude that, because of the continuing paramount concern for the best interests of the child, that the rationale for the Rankin rule equally applies when the parties join in a petition. A couple should not be able to foreclose judicial inquiry into facts which may assist in making the critical determination of how a child's interests would best be served, by agreeing as to who should receive original custody. Whether the decree is entered upon default, or whether the decree is entered upon an agreed petition after brief questioning of the petitioner, the observations we made in Rankin still apply:

"'[t]he primary concern of the courts is always the welfare of the child. It would be unrealistic to assume that this concern can be served as well by a court which does not hear evidence and does not have an opportunity to observe both parents as it can by one in which the right of one parent to custody is contested by the other.'

"_Rankin_ at 537, 458 P.2d at 179. The _Rankin_ rule assures true judicial consideration of all relevant facts concerning the welfare of the children." 617 P.2d at 1035-1036.

MODIFICATION OF VISITATION RIGHTS

Comparison of the visitation rights granted to the appellant in the initial decree with the visitation rights of the appealed judgment supports the appellant's second assertion of error. The initial decree granted appellant six months of visitation until the children reach school age and visitation during the summer months thereafter. The District Court restricted appellant's visitation to one month in the summer. This was error.

Section 40-4-217, MCA, governs modification of visitation rights:

". . . (3) The court may modify an order granting or denying visitation rights whenever modification would serve the best interest of the child; but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral or emotional health." (Emphasis added.)

The record does not contain a finding, nor would the record support such, that the full summer visitation of the initial decree 'would endanger seriously the [children's] physical, mental, moral or emotional health'. The modification was a restriction of visitation without the requisite statutory finding.

The parties do not contest jurisdiction of the Montana court to act. Sections 40-4-211, MCA, and 40-7-104, MCA (Uniform Child Custody Jurisdiction Act), detail the basis for jurisdiction. Under our law jurisdiction over modification of a foreign decree cannot be based upon Montana being the "home state" of the children as the children were not in this state for a sufficient period preceding filing of the petition. Jurisdiction can be premised upon Montana court action being in the "best interest" of the children. We

assume that jurisdiction was so acquired.

In summary, we must reverse the judgment of the District Court and remand for further proceedings congruent with this opinion.  Upon remand the District Court should make a finding that it has jurisdiction and state the basis for that jurisdiction.

_____
Justice

We concur:

_____

_____

_____

_____
Justices